UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| ARACELY ZAMORA-GARCIA, *et al*, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. M-05-331 |
| | § | |
| MARC MOORE, *et al*, | § | |
| | § | |
| Defendant. | § | |

## ORDER DENYING FEDERAL DEFENDANTS' MOTION TO DISMISS

### I. Introduction

Now before this Court is Federal Defendants' Motion to Dismiss Petitioners'/Plaintiffs' Fourth Amended Petition for Writ of Habeas Corpus and Class Action Complaint for Damages, Injunctive, Declaratory and Other Relief. (Doc. 35).[1] [2] [3] Federal Defendants filed the instant motion pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6). *Id.* After carefully reviewing Petitioners'/Plaintiffs' live pleading and considering Federal Defendants' Motion in light of relevant case law, the Court has determined that Federal Defendants' Motion should be DENIED, as discussed below.

---

[1]    Federal Defendants include Marc Moore, Director for Interior Enforcement, Department of Homeland Security; and Alberto Gonzales, U.S. Attorney General, the United States of America. (Doc. 72). Plaintiffs sued Federal Defendants in their official capacity. *Id.*

[2]    Although Petitioners/Plaintiffs have since amended their Petition and Complaint, Petitioners'/Plaintiffs' amended Petition and Complaint assert no new claims against Federal Defendants. (Doc. 72). As such, the Court will construe Federal Defendants' Motion to Dismiss as challenging the live pleading. The Court also will consider the arguments and exhibits in opposition to Federal Defendants' Motion. (Docs. 38, 55, 59, 60, 61, 62, 64, 65, 90, 91, 94, 87).

[3]    When discussing the habeas claims before it, the Court will refer to Petitioners and Federal Respondents. When discussing the non-habeas claims before it, the Court will refer to Plaintiffs and Federal Defendants.

## II.  Factual and Procedural Background

The present case involves numerous claims by Plaintiffs against Federal Defendants, Bonding Defendants,[4] and Defendant Santiago Sol arising out of these Defendants' alleged mishandling of surety and cash bonds secured by immigrants during the pendency of their removal proceedings.  (Doc. 72).[5] [6]  An immigrant in removal proceedings who is detained by the Department of Homeland Security ("DHS") may bond out from detention by either obtaining a surety bond (posted with DHS by a surety, who has contracted with an indemnitor, for the benefit of the immigrant) or a cash bond (posted with DHS by an obligor for the benefit of the immigrant).  (Docs. 35, 38, 72).  Federal Defendants notify the bonded immigrant of any DHS demand, or call, on the bond by sending notice to the surety, in the case of surety bonds, or to the obligor, in the case of cash bonds.  *Id.*  Plaintiffs now challenge various aspects of Federal Defendants' involvement in this  process as violative of Plaintiffs' procedural due process and equal protection rights under the U.S. Constitution.  (Docs. 38, 72).

Plaintiffs' allegations concerning the mishandling of immigration bonds commenced with the filing of the predecessor action to this case on April 16, 2002.  (Doc. 38); *see Zamora-Garcia v. Trominski* , Southern District of Texas, McAllen Division, Case No. M-02-144 (Doc. 1).  In the predecessor action, this Court found that it had jurisdiction over Plaintiffs' "non-habeas" bond claims against Federal Defendants.  *Zamora-Garcia v. Trominski*   (Docs. 20, 61, 124).  The Court

---

[4]     Bonding Defendants include Michael W. Padilla, in his capacity as independent administrator with will annexed of the estate of Don Vannerson, d/b/a Aaron Federal Bonding Agency; Fairmont Specialty Insurance Company, f/k/a Ranger Insurance Company; and Stonington Insurance Company, f/k/a Nobel Insurance Company.  (Doc. 72).

[5]     Plaintiffs seek class-wide relief in connection with these claims.  (Doc. 72).

[6]     In accordance with this Court's prior order granting certain Petitioners habeas relief and ordering that they be provided with Orders of Supervision ("OOS"), Petitioners also seek class-wide relief with respect to their OOS claims.  *Zamora-Garcia v. Trominski* , Southern District of Texas, McAllen Division, Case No. M-02-144 (Doc. 124).  Federal Defendants do not move for dismissal of these claims.  (Doc. 35).

eventually held that Federal Defendants were not contractually or constitutionally required to provide notice to the bonded immigrant of demands on surety bonds. *Zamora-Garcia v. Trominski* (Doc. 135). In addition, the Court found that Plaintiffs had no standing to assert procedural due process claims against Federal Defendants regarding the handling of cash bonds, as none of the named Plaintiffs could show that the injury at issue (bond breach) was traceable to Federal Defendants' challenged conduct (ignoring the obligor Plaintiffs' attempts to change their addresses with Federal Defendants). *Id.* As such, the Court dismissed Plaintiffs' bond claims against Federal Defendants. *Id.*

Upon the filing of Petitioners'/Plaintiffs' Third Amended Petition and Class Action Complaint (Doc. 150), the Court ordered that the amended Petition and Complaint be severed into a new action. *Zamora-Garcia v. Trominski* (Doc. 151). In its order severing the present case from the predecessor action, the Court explained as follows:

> On this day, Plaintiffs' Third Amended Petition was filed in this matter. This action originally began several years ago. Most of the issues have been resolved. Some original Plaintiffs remain but are now asserting claims against new entities as well as reasserting certain claims against current parties. Recently, a newly filed action was transferred from another Court into this cause (Case No. M-05-CV-176). In the interest of judicial economy, the Court desires to sever the Third Amended Petition into its own cause so that it may proceed independently. This will help avoid confusion as to whom the parties are that remain and as to what claims are pending. This also will render the prior decisions issued in [the predecessor action] final and appealable.

*Id.*

In other words, the Court recognized that the present action is essentially a continuation of the predecessor action. At the same time, the Court clearly ordered that all decisions issued by the Court in the predecessor action were to be "final and appealable." *Id.*

In Petitioners'/Plaintiffs' Fifth Amended Petition and Complaint filed in the present action, Plaintiffs continue to assert claims against Federal Defendants arising out of Federal Defendants' alleged mishandling of immigration bonds. (Doc. 72). More specifically, Plaintiffs characterize

their current claims against Federal Defendants as challenging Federal Defendants' failure "to act reasonably and constitutionally in their efforts to provide notice of calls on cash bonds to cash bond obligors," thus resulting in bond breaches.  (Doc. 38).  According to Plaintiffs, Federal Defendants take no further efforts to notify cash bond obligors of demands on bonds after a notice of demand is returned undelivered to Federal Defendants, even though the bonded immigrant has presented himself to all hearings and other settings of which he had actual notice.  (Docs. 38, 72 at ¶¶ 193-99).  Plaintiffs further claim that "[i]n contrast to the poor treatment afforded cash bond obligors, surety bond obligors (the Bonding Defendants) are allowed to remediate the bond breach by presenting immigrants bonded on surety bonds long after the scheduled surrender date."  (Docs. 38, 72 at ¶¶ 196-198).  According to Plaintiffs, the above conduct gives rise to violations of the due process and equal protection clauses of the Fifth Amendment to the U.S. Constitution.  (Docs. 38, 72).

## III. Federal Defendants' Motion to Dismiss

### A. Fed.R.Civ.P. 12(b)(1)

Federal Defendants first move to dismiss Plaintiffs' claims against them on the grounds that this Court lacks subject matter jurisdiction over these claims.  (Doc. 35).  Rule 12(b)(1) of the Federal Rules of Civil Procedure authorizes the dismissal of a case for lack of subject matter jurisdiction when the district court lacks statutory and constitutional power to adjudicate the case.   Fed.R.Civ.P.  12(b)(1); *see also  Home Builders Ass'n of Mississippi, Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)(quoting *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996)).  A court may base its disposition of a motion to dismiss for lack of subject matter jurisdiction on any one of three bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint

supplemented by undisputed facts plus the court's resolution of disputed facts.  *Ramming v. U.S.*, 281 F.3d 158, 161 (5th Cir. 2001)(citing *Barrera-Montenegro v. U.S.*, 74 F.3d 657, 659 (5th Cir. 1996)).  A motion made pursuant to Rule 12(b)(1) "should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief."  *Home Builders Ass'n*, 143 F.3d at 1010 (citing *Benton v. U.S.*, 960 F.2d 19, 21 (5th Cir. 1992)).

According to Federal Defendants, Plaintiffs seek only declaratory and injunctive relief against Federal Defendants.  (Doc. 35).  Federal Defendants argue that the Declaratory Judgment Act is not an independent basis for jurisdiction, which basis must exist before a claim for declaratory and injunctive relief can be considered.  *Id.*  Federal Defendants further argue that "[m]oreover, the Attorney General through [the Immigration and Naturalization Service, or "INS"] or now DHS has complete discretion to 'commence proceedings, adjudicate cases, or execute removal orders against [any] alien.'"  *Id.* (citing 8 U.S.C. § 1252(g)).

Plaintiffs counter by arguing that this Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1352 over their claims against Federal Defendants for  violations of the due process and equal protection clauses of the Fifth Amendment to the U.S. Constitution.  (Doc. 38).  Clearly, such claims "aris[e] under the Constitution...of the United States," thus placing the claims within this Court's original jurisdiction.  *See* 28 U.S.C. § 1331.  In addition, the Court has "original jurisdiction...of any action on a bond executed under any law of the United States...."  8 U.S.C. § 1352.  Plaintiffs asserted the same grounds for this Court's jurisdiction with respect to its bond claims in the predecessor action, and the Court exercised jurisdiction over such claims.  *Zamora-Garcia v. Trominski*  (Docs. 20, 61).  Notably, the Court also found that 8 U.S.C. § 1252(g) did not preclude the Court's exercise of jurisdiction over Plaintiffs' bond claims against

Federal Defendants. *Zamora-Garcia v. Trominski*   (Doc. 61).  The Court explained as follows:

> ...8 U.S.C. § 1252(g) does not deprive courts of jurisdiction to review "the universe of deportation claims" but rather applies only to "three discreet actions that the Attorney General may take: her 'decision or action' to 'commence proceedings, adjudicate cases, or execute removal orders.'"  *Reno v. American-Arab Anti-Discrimination Committee*   , 525 U.S. 471, 482 (1999)).  The *American-Arab*   Court noted that this does not prohibit the district courts from exercising appropriate jurisdiction to review "many other decisions or actions that may be a part of the deportation process–such as the decisions to open an investigation, to surveil the suspected violator, to reschedule the deportation hearing, to include various provisions in the final order that is the product of the adjudicator, and to refuse reconsideration of that order."  *Id.*  Furthermore, the Court found it "implausible that the mention of three discrete events along the road to deportation was a shorthand way of referring to all claims arising from deportation proceedings."  *Id.*

*Id.*

The Court further reasoned that Plaintiffs' challenges to Federal Defendants' bond practices did not "'aris[e] from' the decision or action of the Attorney General to commence proceedings, adjudicate cases, or execute removal orders" under § 1252(g).  *Id.*  Rather, the Court found that Plaintiffs' allegations of "lack of actual, timely notice to the non-citizen of the demand on his or her bond, and the subsequent bond breach that occurs," involved "'other decisions or actions that [are] part of the deportation process.'"  *Id.*  As such, the Court concluded that § 1252(g) did not preclude  its exercise of jurisdiction over Plaintiffs' bond claims.  *Id.*

Although Plaintiffs have now re-characterized their bond claims against Federal Defendants, in that they now challenge Federal Defendants' alleged lack of diligence in notifying obligors of demands on cash bonds, in addition to challenging Federal Defendants' alleged differing treatment of cash bond obligors and sureties, the reasoning in support of the Court's exercise of jurisdiction over Plaintiffs' bond claims in the predecessor action remains applicable here. *American-Arab*   remains good law, and Plaintiffs' present claims against Federal Defendants clearly involve "other decisions or actions that may be a part of the deportation process." *See* *Elyakoubi v. Gonzales*  , 155 Fed.Appx. 807, 808-09 (5th Cir. 2005)(quoting *American-Arab*   and

recognizing that Supreme Court has given § 1252(g) a "narrow" reading); *Kale v. U.S. I.N.S.*, 37 Fed.Appx.90 at *3 (5th Cir. 2002)(same); *Foster v. Townsley*, 243 F.3d 210, 213 (5th Cir. 2001)(same).  For the foregoing reasons, the Court finds that it has subject matter jurisdiction over Plaintiffs' bond claims against Federal Defendants.

## B.  Fed.R.Civ.P. 12(b)(6)

Federal Defendants also move to dismiss Plaintiffs' bond claims against them pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  (Doc. 35).  A Rule 12(b)(6) motion to dismiss for failure to state a claim should be granted only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Chiras v. Miller*, 432 F.3d 606, 610-11 (5th Cir. 2005);  *Lowrey v. Texas A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997); *see also Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 570 (5th Cir. 2005), *cert. denied*, 126 S.Ct. 1662 (2006)(stating that "[m]otions to dismiss are viewed with disfavor and are rarely granted"). Thus, in determining whether dismissal should be granted, the Court must accept all well-pleaded facts as true and construe all reasonable inferences in the light most favorable to the plaintiff.  *Chiras*, 432 F.3d at 610-11; *Lowrey*, 117 F.3d at 247; *Norman v. Apache Corp.*, 19 F.3d 1017, 1021 (5th Cir. 1994).  To avoid dismissal, however, a plaintiff must plead specific facts, rather than conclusory allegations.  *Chiras*, 432 F.3d at 611 (citing *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992)); *Kane Enters. v. MacGregor (USA), Inc.*, 322 F.3d 371, 374 (5th Cir. 2003).

Federal Defendants argue for the dismissal of Plaintiffs' bond claims on the grounds that, "for the most part," the Court has already dismissed such claims.  (Doc. 35).  As explained *supra*, the Court previously ruled that Federal Defendants were not required by contract to notify the

bonded immigrant of demands on *surety* bonds, nor did such lack of notice to the bonded immigrant involve any cognizable constitutional violation. *Zamora-Garcia v. Trominski*  (Doc. 135).  With regard to Plaintiffs' *cash* bond claims against Federal Defendants, the Court explained that "[i]t appears...that [Federal Defendants'] apparent practice of ignoring obligors' attempts to change their addresses with Defendants, which practice directly results in bond breaches and [Federal Defendants'] ability to retain the collateral posted and reassert custody over [the bonded immigrants] constitutes the specific injury that raises the specter of a procedural due process violation." *Id.*  Because none of the named Plaintiffs in the predecessor action could show that they did not receive notice of demands on bonds as a result of their attempts to change their addresses with Federal Defendants, which attempts were ignored, the Court found that Plaintiffs had no standing to assert the procedural due process claims at issue. *Id.*

In the present action, Plaintiffs' live pleading does not seek relief against Federal Defendants for their failure to provide notice to bonded immigrants on *surety* bonds.  (Docs. 38, 72).  As explained *supra*, Plaintiffs characterize their current *cash* bond claims against Federal Defendants as challenging Federal Defendants' failure "to act reasonably and constitutionally in their efforts to provide notice of calls on cash bonds to cash bond obligors," thus resulting in bond breaches.  (Doc. 38).  In addition, Plaintiffs assert that "[i]n contrast to the poor treatment afforded cash bond obligors, surety bond obligors (the Bonding Defendants) are allowed to remediate the bond breach by presenting immigrants bonded on surety bonds long after the scheduled surrender date." *Id.*  Plaintiffs claim that Federal Defendants' actions violate Plaintiffs' procedural due process and equal protection rights. *Id.*

In response to the Court's prior finding that no named Plaintiff existed who had standing to assert the cash bond claims at issue, Plaintiffs now assert that Plaintiff Adriana Echavarria has

standing to challenge Federal Defendants' alleged failure to provide her actual notice of any demand on the cash bond of her husband, Plaintiff Jorge Echavarria.  (Doc. 72).  More specifically, Plaintiffs allege that Mrs. Echavarria paid a cash bond in order to secure her husband's release during proceedings.  *Id.*  According to Plaintiffs, the bond papers did not warn Mrs. Echavarria that she had to report any change of address, independently of any changes of address of her husband.  *Id.*  Plaintiffs assert that Mr. Echavarria never failed to appear at an Immigration Court setting, was represented by counsel at all relevant times, and was granted relief from deportation on June 10, 2003.  *Id.*  According to Plaintiffs, the Echavarrias assumed that the bond had been cancelled upon the granting of relief; however, counsel was informed by Federal Defendants that the bond had been breached.  *Id.*  Plaintiffs claim that neither Mr. or Mrs. Echavarria ever received notice, in person or through counsel, of any demand on the bond. *Id.*  Plaintiffs further allege that Federal Defendants, on an unknown date, made a demand on Mrs. Echavarria that she produce her husband but sent the demand to an address where she had resided in 1993.  *Id.*  Plaintiffs also allege, upon information and belief, that Federal Defendants *knew* that she and her husband were no longer at that address and had information regarding how to contact Mrs. Echavarria.  *Id.*

As  indicated *supra*, the Court's prior dismissal of Plaintiffs' cash bond claims against Federal Defendants rested solely on the Court's finding that none of the named obligor Plaintiffs had shown that the procedural due process injury at issue (bond breach) resulted from Federal Defendants' challenged conduct (ignoring obligor Plaintiffs' attempts to change their addresses). *Zamora-Garcia v. Trominski*   (Doc. 135).  The Court is now satisfied that obligor Plaintiff Echavarria, in asserting that she was never notified of any requirement to change her address with Federal Defendants, that her husband appeared at every Immigration Court setting until the

favorable disposition of his case, and that Federal Defendants sent a demand on her husband's cash bond to Mrs. Echavarria's 1993 address despite *knowing* that she was no longer at that address, thus resulting in a bond breach, has alleged facts sufficient to create standing to assert Plaintiffs' procedural due process claim as set forth in Plaintiffs' live pleading.

Moreover, Plaintiffs have notified the Court of the U.S. Supreme Court's April 26, 2006 decision in *Jones v. Flowers*, 126 S.Ct. 1708 (2006), in which the Court held that "when mailed notice of a tax sale is returned unclaimed, [a] State must take additional reasonable steps to attempt to provide notice to the property owner before selling his property, if it is practicable to do so." (Doc. 65); *Jones*, 126 S.Ct. at 1713. In *Jones*, Respondent argued that once the State provided notice reasonably calculated to apprise Petitioner of the impending tax sale by mailing him a certified letter, due process was satisfied. *Id.* at 1714. Addressing for the first time the issue of "whether due process entails further responsibility when the government becomes aware that prior to the [deprivation of the constitutionally protected interest] its attempt at notice has failed," the Supreme Court noted that "[m]ost Courts of Appeals have...concluded that the Due Process Clause of the Fifth Amendment requires the Federal Government to take further reasonable steps [if initial mailed notice is ineffective] in the property forfeiture context." *Id.* at 1715 n.1. The Court also reasoned that any failure by Petitioner to comply with a statutory obligation to update his address did not relieve the State of its constitutional obligation to provide adequate notice. *Id.* at 1717. The Court concluded that because additional reasonable steps were available to the State to provide notice to Petitioner, Respondent's effort to notify Petitioner was insufficient to satisfy due process. *Id.* at 1718-1721.

In its prior Order, the Court recognized that the lack of notice of a demand on a cash bond and the subsequent bond breach that occurs implicate both an immigrant's liberty interest and the

property interest of the individual who has proffered the bond amount.  *Zamora-Garcia v. Trominski*  (Doc. 135).  Here, Plaintiffs allege that Federal Defendants *knew* of Plaintiff Echavarria's changed address and yet took no additional steps to inform her of a demand on her husband's cash bond when the notice sent to her 1993 address was returned, thus resulting in a bond breach.  As reasonable steps may well have been available to Federal Defendants to notify Mrs. Echavarria of the demand on the bond, it appears that Plaintiffs have stated a procedural due process claim for which relief can be granted.

Finally, with respect to Plaintiffs' equal protection claim concerning Federal Defendants' differing treatment of obligors and sureties, Federal Defendants offer no argument as to why this claim does not state a claim for which relief can be granted.  (Doc. 35).

## IV.  Conclusion

For the foregoing reasons, the Court hereby ORDERS that Federal Defendants' Motion to Dismiss is DENIED.

SO ORDERED this 16th day of August, 2006, at McAllen, Texas.

Randy Crane
United States District Judge