UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| ARACELY ZAMORA-GARCIA, *et al*, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. M-05-331 |
| | § | |
| MARC MOORE, *et al*, | § | |
| | § | |
| Defendant. | § | |

## ORDER GRANTING IN PART AND DENYING IN PART
## INSURER DEFENDANTS' MOTION TO DISMISS

## I.  Introduction

Now before this Court is Defendants' Motion to Dismiss Plaintiffs' Fifth Amended Petition for Writ of Habeas Corpus and Class Action Complaint for Damages, Injunctive, Declaratory and Other Relief.  (Doc. 75).[1]  Defendant Fairmont Specialty Insurance Company ("Fairmont"), f/k/a Ranger Insurance Company, and Defendant Stonington Insurance Company ("Stonington"), f/k/a Nobel Insurance Company, filed the instant motion pursuant to Federal Rules of Civil Procedure  12(b)(1) and 12(b)(6).  *Id.*  After carefully reviewing Plaintiff's live pleading and considering Defendants' Motion in light of relevant case law, the Court has determined that Defendants' Motion should be granted in part and dismissed in part, as discussed below.

## II.  Background

The present case involves numerous claims by Plaintiffs against Federal Defendants,

---

[1]    Defendants incorporate by reference in their entirety, as if fully set forth in this Motion, Defendants' Motion to Dismiss Plaintiffs' Fourth Amended Petition for Writ of Habeas Corpus and Class Action Complaint (Doc. 34) and Defendants' Supplement to their Motion to Dismiss Plaintiffs' Fourth Amended Petition and Complaint (Doc. 54).  (Doc. 75).  The Court also will consider Defendants' Reply to Plaintiffs' Opposition to Defendants' Motion to Dismiss (Doc. 53) and Plaintiffs' submissions in opposition to Defendants' Motion.  (Docs. 38, 58, 66, 76).

[2] Bonding Defendants (which include Defendants Fairmont and Stonington),[3] and Defendant Santiago Sol arising out of these Defendants' alleged mishandling of surety and cash bonds secured by immigrants during the pendency of their removal proceedings.  (Doc. 72).  As to Defendants Fairmont and Stonington ("Insurer Defendants"), Plaintiffs assert class-wide causes of action for breach of contract, fraud, negligent misrepresentation/gross negligence, and unjust enrichment and restitution arising out of Insurer Defendants' alleged breach of surety contracts entered into by the indemnitor Plaintiffs with Insurer Defendants for the benefit of the surety bonded immigrant Plaintiffs.  *Id.* at ¶¶ 112-76.[4][5]  More specifically, Plaintiffs allege that Insurer Defendants enter into surety contracts with the indemnitors, wherein Insurer Defendants agree to post surety bonds for the surety bonded immigrants with the Department of Homeland Security ("DHS")(or its predecessor entity in relevant respects, the Immigration and Naturalization Service, or "INS") to enable the surety bonded immigrants to leave confinement while their removal proceedings are pending.  *Id.* at ¶ 2.  According to Plaintiffs, Insurer Defendants contractually agree to provide notice to both the indemnitors and surety bonded immigrants of all appearances scheduled by DHS but "never, or almost never, provide advance notice of DHS-scheduled appearances" to either, thus resulting in bond breaches.  *Id.* at ¶¶ 2-5.  Plaintiffs claim that this alleged misconduct "causes the [indemnitors] and the [surety bonded immigrants] to forfeit collectively millions of dollars and compromises the [surety bonded immigrants']

---

[2]    Federal Defendants include Marc Moore, Director for Interior Enforcement, Department of Homeland Security; and Alberto Gonzales, U.S. Attorney General, the United States of America.  (Doc. 72 at ¶¶ 11-13).  Plaintiffs sued Federal Defendants in their official capacity.  *Id.*

[3]    In addition to Fairmont and Stonington, Bonding Defendants include Michael W. Padilla, in his capacity as independent administrator with will annexed of the estate of Don Vannerson, d/b/a Aaron Federal Bonding Agency ("Aaron Bonding").  (Doc. 72 at ¶¶ 1, 14-16).

[4]    Plaintiffs allege that Insurer Defendants enter into the surety contracts through Insurer Defendants' agent, Aaron Bonding, or its predecessor, U.S. Immigration Bonds and Services.  (Doc. 72 at ¶¶ 1-2).

[5]    Plaintiffs also bring individual, non-class claims against Insurer Defendants for intentional infliction of emotional distress and false imprisonment arising out of the mishandling of surety bonds, as discussed *infra*.  (Doc. 72 at ¶¶ 200-224).

immigration rights." *Id.* at ¶ 1.

### III. Insurer Defendants' Motion to Dismiss

### A. Fed.R.Civ.P. 12(b)(1)

Insurer Defendants first move to dismiss Plaintiffs' claims against them on the grounds that this Court lacks subject matter jurisdiction over these claims.  (Doc. 34).  Rule 12(b)(1) of the Federal Rules of Civil Procedure authorizes the dismissal of a case for lack of subject matter jurisdiction when the district court lacks the statutory and constitutional power to adjudicate the case.    Fed.R.Civ.P.  12(b)(1); *see also Home Builders   Ass'n of Mississippi, Inc. v. City of Madison* , 143 F.3d 1006, 1010 (5th Cir. 1998)(quoting *Nowak v. Ironworkers Local 6 Pension Fund* , 81 F.3d 1182, 1187 (2d Cir. 1996)).   A court may base its disposition of a motion to dismiss for lack of subject matter jurisdiction on any one of three bases: (1) the complaint alone; (2) the  complaint  supplemented  by  undisputed  facts  in  the  record;  or  (3)  the  complaint supplemented by undisputed facts plus the court's resolution of disputed facts.  *Ramming v. U.S.* , 281 F.3d 158, 161 (5th Cir. 2001)(citing *Barrera-Montenegro v. U.S.*  , 74 F.3d 657, 659 (5th Cir. 1996)).   A motion made pursuant to Rule 12(b)(1) "should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief."  *Home Builders Ass'n*  , 143 F.3d at 1010 (citing *Benton v. U.S.* , 960 F.2d 19, 21 (5th Cir. 1992)).

Insurer Defendants claim that this Court cannot exercise subject matter jurisdiction over Plaintiffs' claims against them because Plaintiffs' Complaint fails to present a federal question or invoke jurisdiction under the U.S. Constitution, and diversity of citizenship does not exist.  (Doc. 34).  The Court agrees that Plaintiffs' claims against these particular Defendants are state law claims, and it is undisputed that diversity of citizenship does not exist.  However, at issue here is

whether this Court may exercise supplemental subject matter jurisdiction over Plaintiffs' claims against Insurer Defendants pursuant to 28 U.S.C. § 1367.

Section 1367 provides that this Court "*shall* have supplemental jurisdiction over all other claims that are so related to claims in the action within [the Court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a)(emphasis added). Claims form part of the same case or controversy when they "'derive from a common nucleus of operative fact,' such that 'the relationship between [the federal] claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional 'case.'" *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 164-165 (1997); *see State Nat'l Ins. Co. Inc. v. Yates*, 391 F.3d 577, 579 (5th Cir. 2004).

The Court *may* in its discretion decline to exercise supplemental jurisdiction over pendent state law claims if:

> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c); *see also City of Chicago*, 522 U.S. at 533-34.[6]

The Court also considers the relevant factors of "judicial economy, convenience, fairness, and comity" in determining whether to exercise its discretion in favor of retaining jurisdiction over pendent state law claims. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988); *Smith v. Amedisys Inc.*, 298 F.3d 434, 446 (5th Cir. 2002).

As indicated by Plaintiffs in their response to Defendants' Motion to Dismiss, Plaintiffs' allegations concerning the mishandling of immigration bonds commenced with the filing of the

---

[6]   "Supplemental" and "pendent" are interchangeable terms. *See Yates*, 391 F.3d at 579 n.9.

predecessor action to this case on April 16, 2002.  (Doc. 38); *see Zamora-Garcia v. Trominski* ,

Southern District of Texas, McAllen Division, Case No. M-02-144 (Doc. 1).  In the predecessor

action, this Court found that it had jurisdiction over Plaintiffs' "non-habeas" bond claims against

Federal Defendants. *Zamora-Garcia v. Trominski* (Docs. 20, 61, 124).[7]  The Court eventually

held that Federal Defendants were not contractually or constitutionally required to provide notice

to the bonded immigrant of demands on surety bonds. *Zamora-Garcia v. Trominski* (Doc. 135).

In addition, the Court found that Plaintiffs had no standing to assert procedural due process

claims against Federal Defendants regarding the handling of cash bonds, as none of the named

Plaintiffs could show that the injury at issue (bond breach) was traceable to Federal Defendants'

challenged conduct (ignoring the obligor Plaintiffs' attempts to change their addresses with

Federal Defendants). *Id.*  As such, the Court dismissed Plaintiffs' bond claims against Federal

Defendants. *Id.*  Although Plaintiffs also brought allegations in the predecessor action against

Defendant Aaron Federal Bonding Company ("Aaron Bonding") for the alleged mishandling of

surety bonds, Defendant Aaron Bonding did not challenge this Court's exercise of jurisdiction

over the claims against it, nor did Defendant move for dismissal of Plaintiffs' claims. *Zamora-*

*Garcia v. Trominski* (Doc. 36).[8]

Insurer Defendants were made party to these proceedings at the time this Court rendered all

decisions in the predecessor action final and appealable and severed Plaintiffs' Third Amended

Petition and Class Action Complaint into the present action. *Zamora-Garcia v. Trominski* (Docs.

150, 151).  In its order severing the present case from the predecessor action, the Court expressly

---

[7]    The Court also found that it had jurisdiction over Petitioners' habeas claims against Federal
Defendants arising out Federal Defendants' refusal to issue Orders of Supervision ("OOS") to
Petitioners.  Petitioners continue to seek class-wide relief with respect to these claims. *Zamora-Garcia v.
Trominski* (Doc. 124); (Doc. 72 at ¶ 192).

[8]    The representative of the estate of Don Vannerson has since been substituted for Defendant
Aaron Bonding.  (Docs. 2, 27, 72).

noted that Plaintiffs "are now asserting new claims against new entities as well as reasserting claims against current parties." *Zamora-Garcia v. Trominski* (Doc. 151). In short, the present action essentially is a continuation of the predecessor action, and Plaintiffs' allegations regarding the mishandling of surety and cash bonds remain pending, as to Insurer Defendants as well as to other Defendants. (Doc. 72). Notably, the Court has denied Federal Defendants' Motion to Dismiss Plaintiffs'/Petitioners' live Petition and Complaint, specifically finding that it has subject matter jurisdiction over Plaintiffs' current bond claims against Federal Defendants. (Doc. 100). As such, Plaintiffs' constitutional claims against Federal Defendants arising out of said Defendants' alleged lack of adequate notice to obligors of demands on cash bonds and alleged differing treatment of sureties and obligors remain pending. (Docs. 72 at ¶¶ 193-99, 100).

The Court agrees with Plaintiffs that the "case or controversy" that has evolved to encompass Insurer Defendants essentially challenges Federal Defendants' system of immigrant detention and bonding. (Doc. 38). As noted by Plaintiffs, immigrants may bond out from DHS detention by either obtaining a cash bond (posted with DHS by an obligor for the benefit of a detained immigrant) or a surety bond (posted with DHS by a surety, who has contracted with an indemnitor, for the benefit of a detained immigrant). *Id.*; (Docs. 38, 72 at ¶¶ 36, 38). Plaintiffs complain of Federal Defendants' lack of adequate notice to obligors, and Insurer Defendants' lack of adequate notice to indemnitors and surety bonded immigrants, of DHS demands on bonds, which alleged misconduct results in bond breaches that have negative consequences for the obligors, indemnitors, and bonded immigrants involved. (Doc. 72 at ¶¶ 36-55). In addition, Plaintiffs claim that Federal Defendants treat sureties, or bonding companies, more favorably than obligors, in violation of Plaintiffs' equal protection rights under the U.S. Constitution. *Id.* at ¶¶ 59-61, 196-97. Specifically, Plaintiffs allege that "[i]n practice, [Federal Defendants] exhibit

a great deal of restraint and flexibility with respect to surety bonds, in some cases permitting cancellation, and full exoneration of liability, even when the [bonded immigrant] is surrendered long after the grace period...has expired, and in others, sending out more than one demand letter, years apart, and only taking steps to breach the bond if the immigrant is not produced in response to the second demand letter." *Id.* at ¶ 59.  Upon information and belief, Plaintiffs allege that the flexibility shown by Federal Defendants to sureties is meant "to achieve the earliest possible removal of [the bonded immigrant]...with the least possible liability on the bond to the [surety]...." *Id.* at ¶ 60.  Where cash bonds are posted by individuals, however, Plaintiffs claim that Federal Defendants "manipulate the bond system, by failing to make good faith attempts to provide actual notice to...the obligor..., so as to be able to breach the bond and thus keep the collateral posted...." *Id.* at ¶ 61.

The Court recognizes that the current claims against Federal Defendants over which this Court has original jurisdiction relate to cash bonds, whereas Plaintiffs' claims against Insurer Defendants involve surety bonds.  However, the claims against Federal Defendants and Insurer Defendants clearly comprise but one constitutional case, as they derive from Federal Defendants' bonding practices and the alleged lack of adequate notice of calls on bonds involved in such practices.  As such, the Court finds that Plaintiffs' claims against Insurer Defendants are so related to claims over which this Court has original jurisdiction that they form part of the same case or controversy.  *See* 28 U.S.C. § 1367(a).

As explained *supra*, the Court must now consider whether any of the factors articulated in 28 U.S.C. § 1367(c) weigh in favor of declining to exercise supplemental jurisdiction over Plaintiffs' claims against Insurer Defendants.  Insurer Defendants do not argue that the state law claims against them "[raise] a novel or complex issue of State law," and indeed it does not appear

that Plaintiffs' claims against Insurer Defendants implicate novel or complex state law issues. *See* 28 U.S.C. § 1367(c)(1); (Doc. 72). Neither does it appear that the state law claims "predominate" over the federal claims over which this Court has original jurisdiction. *See* 28 U.S.C. § 1367(c)(2). Rather, as discussed *supra*, the state and federal claims are intertwined so as to form but one constitutional case. Unlike the case of *Garro v. Connecticut*, 23 F.3d 734 (2d Cir. 1994), which Defendants cite in their Motion, the Court cannot say that "all but an insubstantial federal claim" remains. *Garro*, 23 F.3d at 737; (Doc. 34). Rather, Plaintiffs continue to assert both due process and equal protection claims against Federal Defendants arising out of said Defendants' bond practices. Furthermore, this Court clearly has not dismissed all claims over which it has original jurisdiction, and the Court cannot ascertain the presence of any "exceptional circumstances" or "compelling reasons" that would weigh in favor of declining to exercise supplemental jurisdiction. *See* 28 U.S.C. § 1367(c)(3), (4).

Finally, the Court's consideration of the principles of "judicial economy, convenience, fairness, and comity" does not persuade it to decline its exercise of supplemental jurisdiction in the present case. The Fifth Circuit found these principles to weigh heavily toward retaining jurisdiction where: (1) the case had been pending for almost three years; (2) the parties had taken numerous depositions; (3) the matter had progressed to the advanced stages of litigation; and (4) the district court had devoted many hours to reviewing the parties' memoranda, the attached exhibits, and the record in the case; researching the legal issues involved; and reaching decisions in a summary judgment ruling and, thus, had substantial familiarity with the merits of the case. *Smith*, 298 F.3d at 447; *see also Batiste v. Island Records*, 179 F.3d 217, 227-28 (5th Cir. 1999)(finding that factors of judicial economy, convenience, and fairness strongly pointed toward retaining supplemental jurisdiction where case had been pending in district court for

almost three years; record was extensive; case had involved numerous depositions and discovery disputes; and district court had considered multiple motions to dismiss or for summary judgment).

Here, almost four years have passed between the commencement of the predecessor action and the date of Defendants' filing of their initial Motion to Dismiss. *Zamora-Garcia v. Trominski* (Doc. 1); (Doc. 34). Discovery has been conducted and the Court has invested a substantial amount of time in reviewing the various parties' contributions to the extensive record in both the predecessor and present actions. The Court also has disposed of several motions to dismiss and a motion for reconsideration and has granted habeas relief to individual Petitioners, thus gaining substantial familiarity with the merits of the case in the process. *Zamora-Garcia v. Trominski* (Docs. 20, 61, 124, 131, 135); (Doc. 100). Although Insurer Defendants entered the present case several years after the commencement of the predecessor action, the pending claims against Insurer Defendants clearly grew out of the original claims against Federal Defendants and prior Defendant Aaron Bonding and the discovery conducted with respect to those claims. Specifically, Insurer Defendants entered the case only after Plaintiffs asked for leave to amend their Complaint based on discovery received. In their request for leave, Plaintiffs explained that "when [Plaintiffs] finally obtained discovery from the non-federal defendants..., they discovered that the [surety bond contracts] were between [Insurer Defendants] and the indemnitors, and that those contracts contain clauses whereby [Insurer Defendants] promise to give notice to both the indemnitor and the bonded immigrant of any demands made on the bonds by the federal Defendants." *Zamora-Garcia v. Trominski* (Doc. 141). Insurer Defendants cannot therefore claim that their entrance into the present case bears no relation to the predecessor case over which this Court presided for several years; rather, they are now Defendants in the present action

because of the developments in the predecessor action.  The Court also agrees with Plaintiffs that "just as this Court has invested substantial judicial resources in this case, the parties have also invested substantial resources of their own."  (Doc. 38).  For these reasons, the Court concludes that the factors of judicial economy, convenience, and fairness weigh in favor of the exercise of supplemental jurisdiction over the claims against Insurer Defendants.

Insurer Defendants attempt to argue that allowing them to remain in the case compromises the principle of fairness, as Plaintiffs' attempt to assert bond claims against both Insurer Defendants and Federal Defendants in the same action reveals an intent to "inflame the jury against [Federal Defendants] by arguing that the federal government treats the cash bond Plaintiffs differently than the surety bond Plaintiffs."  (Doc. 53).  However, the equal protection claim against Federal Defendants will proceed whether Insurer Defendants remain in the action or not; therefore, Insurer Defendants cannot argue that Federal Defendants will be prejudiced because of Insurer Defendants' presence in the case.  With respect to comity, the Court reiterates that Plaintiffs' federal and state claims arising out of the mishandling of bonds together form a unified challenge to the *federal* system of detention and bonding of immigrants.  In addition, the present case does not involve any novel or complex issues of state law.  *See Batiste*, 179 F.3d at 227 (indicating no violation of principle of comity where there was "absence of any difficult state-law questions"); *see also  Parker & Parsley Petroleum Co. v. Dresser Indus.  *, 927 F.2d 580, 589 (5th Cir. 1992)(interests of federalism and comity point strongly toward dismissal where only difficult state law issues remain).

As the Court's consideration of the factors set forth in 28 U.S.C. § 1367(c) and the interests of judicial economy, convenience, fairness, and comity does not persuade it to decline its exercise of supplemental jurisdiction over Plaintiffs' state law claims against Insurer Defendants,

the Court rejects Plaintiffs' 12(b)(1) challenge.

**B.  Fed.R.Civ.P. 12(b)(6)**

Insurer Defendants also move to dismiss Plaintiffs' breach of contract, fraud, negligent misrepresentation/gross negligence, intentional infliction of emotional distress, and false imprisonment claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  (Doc. 34).[9]  A Rule 12(b)(6) motion to dismiss for failure to state a claim should be granted only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Chiras v. Miller*, 432 F.3d 606, 610-11 (5th Cir. 2005); *Lowrey v. Texas A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997); *see also Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 570 (5th Cir. 2005), *cert. denied*, 126 S.Ct. 1662 (2006)(stating that "[m]otions to dismiss are viewed with disfavor and are rarely granted").  Thus, in determining whether dismissal should be granted, the Court must accept all well-pleaded facts as true and construe all reasonable inferences in the light most favorable to the plaintiff.  *Chiras*, 432 F.3d at 610-11; *Lowrey*, 117 F.3d at 247; *Norman v. Apache Corp.*, 19 F.3d 1017, 1021 (5th Cir. 1994).  To avoid dismissal, however, a plaintiff must plead specific facts, rather than conclusory allegations.  *Chiras*, 432 F.3d at 611 (citing *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992)); *Kane Enters. v. MacGregor (USA), Inc.*, 322 F.3d 371, 374 (5th Cir. 2003).

**1.  Breach of Contract**

Insurer Defendants move to dismiss Plaintiffs' breach of contract claims on a number of grounds.  (Docs. 34, 54).  The elements of a breach of contract claim under Texas law are (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach

---

[9]    Insurer Defendants do not advance any arguments in support of the dismissal of Plaintiffs' unjust enrichment/restitution claim.

of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the defendant's breach. *E.g.*, *McLaughlin, Inc. v. Northstar Drilling Tech., Inc.*, 138 S.W.3d 24, 27 (Tex.App.-San Antonio 2004, no pet.); *Prime Prods., Inc. v. S.S.I. Plastics, Inc.*, 97 S.W.3d 631, 636 (Tex.App.-Houston [1st Dist.] 2002, pet. denied); *Lewis v. Bank of Am. NA*, 343 F.3d 540, 544-45 (5th Cir. 2003). The language in a contract is to be given its plain grammatical meaning unless to do so would defeat the parties' intent. *Reilly v. Rangers Mgmt., Inc.*, 727 S.W.2d 527, 529 (Tex. 1987); *DeWitt County Elec. Coop., Inc. v. Parks*, 1 S.W.3d 96, 101 (Tex. 1999); *REO Indus., Inc. v. Natural Gas Pipeline Co. of Am.*, 932 F.2d 447, 453-54 (5th Cir. 1991). If a contract is worded so that it can be given definite or certain legal meaning, it is not ambiguous and will be construed as a matter of law. *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003); *Weir v. Fed. Asset Disposition Ass'n*, 123 F.3d 281, 286 (5th Cir. 1997). An ambiguity exists only if the contract language is susceptible to two or more reasonable interpretations. *Schaefer*, 124 S.W.3d at 157; *Valmont Energy Steel, Inc. v. Commercial Union Ins. Co.*, 359 F.3d 770, 774 (5th Cir. 2004). Although determining whether a contract is ambiguous is a matter of law, the interpretation of an ambiguous contract becomes an issue of fact. *Coker v. Coker*, 650 S.W.2d 391, 393-94 (Tex. 1983); *U.S. Quest Ltd. v. Kimmons*, 228 F.3d 399, 404 (5th Cir. 2000).

Plaintiffs' Complaint alleges that Insurer Defendants, who enter into surety contracts through Insurer Defendants' agent, Aaron Bonding, fail to provide notice to indemnitors or surety bonded immigrants of DHS/INS demands on surety bonds, as required by the surety contracts at issue. (Doc. 72). The Complaint alleges, and Insurer Defendants do not dispute, that the surety contract states that "[BONDED IMMIGRANT] and INDEMNITOR will be notified by AGENCY of all appearances requested by the U.S. IMMIGRATION AND NATURALIZATION SERVICE of

which AGENCY receives notice." (Docs. 54, 72 at ¶ 47). According to Plaintiffs, Insurer Defendants routinely breach the surety contracts by failing to provide such notice, thus resulting in "severe consequences" for both indemnitors and bonded immigrants. (Doc. 72 at ¶ 40).[10]

In challenging Plaintiffs' breach of contract claim under Rule 12(b)(6), Insurer Defendants first argue that any alleged breach of the surety contracts by Insurer Defendants is necessarily preceded by Plaintiffs' own breaches of the contracts, thus precluding Plaintiffs' recovery. (Doc. 34). Insurer Defendants claim that the surety contract requires the indemnitor and bonded immigrant to report to the bonding agent every thirty (30) days and immediately notify the agent of any change in the indemnitor and/or bonded immigrant's address, telephone number, employer, attorney, immigration status, and/or departure from the United States. *Id.* Insurer Defendants maintain that Plaintiffs' Complaint does not allege that Plaintiffs complied with these obligations. *Id.* However, the Court notes that the Complaint specifically alleges that the indemnitors and bonded immigrant Plaintiffs "have performed or, in the alternative, have substantially performed their obligations under the contracts." (Docs. 38, 72 at ¶¶ 114, 127); *see Griffin v. Shamburger*, 262 S.W. 144, 146-47 (Tex.Civ.App. 1924)("In an action to recover upon a contract it is sufficient for plaintiff to allege general compliance with the contract on his part

---

[10]   Specifically, Plaintiffs allege as follows:

In the event of a breach of the bond, the Bonded Immigrant who is under a final order of removal  will be deported if detained and forfeits his rights to pursue any administrative remedies challenging  the removal order.  In the event of a breach of the bond, Bonded Immigrants not under a final removal order are remanded to detention, forfeit the rights provided to them by the original bond, and may have difficulty obtaining a new bond.  The Bonded Immigrant's money is at stake, too: once the bond is breached, any amount he or she paid into the Build-Up Account is forfeited.  As to the Indemnitors, upon the breach of the bond, any collateral that they posted with the Bonding Defendant is in jeopardy, and they are obligated to the Bonding Defendant for whatever amount the Bonding Defendant must pay out-of-pocket to the DHS on the bond, plus additional fees charged by the Bonding Defendant.  In most cases this amounts to thousands of dollars (on top of the non-refundable fee the Indemnitor previously paid the Bonding Defendant).

(Doc. 72 at ¶ 41).

without alleging specifically and in detail the performance of every act required to be done by him.").

Insurer Defendants also contend that they do not receive notices of removal hearings and, therefore, "cannot be guilty of breaching any contracts" with the indemnitors and bonded immigrants.  (Doc. 34).  However, Insurer Defendants seem to ignore the statement in Plaintiffs' Complaint that  "[n]otices of scheduled appearances by DHS (formerly the INS) are not to be confused with notices of removal hearings provided by the Executive Office of Immigration Review ("EOIR"), an agency within the Department of Justice.  Notices issued by the EOIR of removal hearings before the EOIR are served directly on the Bonded Immigrant or his/her attorney of record."  (Doc. 72 at ¶ 49).  In addition, a plain reading of the notice provision in the surety contract indicates that Insurer Defendants must provide notice of "all appearances" requested by DHS/INS of which they receive notice.  (Docs. 38, 72 at ¶ 47).  Given Plaintiffs' concession that "all appearances" do not include removal hearings, Insurer Defendants' reading of the notice provision as requiring only notices of removal hearings is not reasonable.  As such, the Court rejects Insurer Defendants' argument.[11]

Insurer Defendants also argue that Plaintiffs have failed to identify a breach of the surety contract on the part of Insurer Defendants.  (Doc. 54).  According to Insurer Defendants, any demand on the bond typically is made by DHS/INS after removal proceedings have concluded and an order of removal has been entered.  *Id.*  Therefore, at this point DHS/INS does not require any more "appearances" before DHS/INS.  *Id.*  Rather, DHS/INS's demand on the bond is

---

[11]    Insurer Defendants also posit that Plaintiffs' Complaint in effect admits that Plaintiffs breach the surety contracts by failing to appear after demands on surety bonds have been made.  (Docs. 34, 53 (citing Plaintiffs' Complaint at ¶ 40)).  Although Plaintiffs allege that "[u]nfortunately, in ***thousands*** of....Surety Bond cases, the Bonded Immigrant does not appear for a DHS appearance after a demand on the bond, resulting in a breach of the bond," Plaintiffs also allege that the bonded immigrant's failure to appear directly stems from Insurer Defendants' alleged breach of the surety contract–that is, their failure to notify the indemnitor and bonded immigrant of any demand on the bond.  (Doc. 72 at ¶ 40 (emphasis in original)).  As such, Insurer Defendants' argument is without merit.

simply a demand that the surety surrender the bonded immigrant to custody.  *Id.*   Plaintiffs

counter that a plain reading of the notice provision in the surety contract indicates that if

DHS/INS requests that a bonded immigrant make an appearance before DHS, for whatever

reason, and the surety receives notice of this request, it will notify both the indemnitor and the

bonded immigrant of the request.  (Doc. 66).

> The Court recognizes that Plaintiffs' Complaint alleges as follows:
>
> The DHS has the right to issue a call-in on the bond for any reason.  Although such demands
> are most common when the DHS has decided to execute an administratively final order of
> removal, they are not limited to such situations.  For example, in the case of Plaintiff Miguel
> Rubio, who was in deportation proceedings, and had never failed to appear before a hearing
> before an immigration judge, the demand was issued for the purpose of placing him under
> removal proceedings and detaining him without bond.

(Doc. 72 at ¶ 50).

The Court finds that Plaintiffs have sufficiently alleged that the notice provision's use of the

term "all appearances" reflects the reality that DHS/INS can make demands on Plaintiffs' surety

bonds for a variety of reasons.  (Doc. 66).  In addition, even assuming that DHS/INS only makes

demands on bonds for the purpose of effecting bonded immigrants' deportations, Insurer

Defendants' argument that this type of a demand on a bond does not request an "appearance"

before DHS/INS is not a reasonable interpretation of that term.  The Court further notes that even

if Insurer Defendants' interpretation of the term "appearances" were a reasonable one, and thus

sufficient to create an ambiguity in the contract, the interpretation of the ambiguity is a question

of fact not to be resolved at this stage.  *Id.*  As such, Insurer Defendants' argument is without

merit.

Insurer Defendants next claim that even if a demand on a bond is a request for an

"appearance," Plaintiffs receive actual personal notice of the bond demand upon apprehension by

Aaron Bonding or one of its agents.  (Doc. 54).  Insurer Defendants contend that because the

notice provision does not define the type of notice to be given, notice by apprehension is sufficient. *Id.* Plaintiffs counter that "[i]t is difficult to imagine a functioning society in which, as the Insurers suggest, one can provide contractual notice to another through physical apprehension." (Doc. 66).

In support of their argument that apprehension equals actual notice, Insurer Defendants cite to the case of *Comeaux v. Suderman*, 93 S.W.3d 215 (Tex.App.-Houston [14th Dist.] 2002, no writ). (Doc. 54). In *Comeaux*, the appellant argued that he did not receive technically sufficient notice of his right of first refusal with respect to property leased by the appellant. *Comeaux*, 93 S.W.3d at 220-22. The court determined that technical compliance with the contractual notice requirement at issue was not warranted, as the appellant had received written notice of the pending sale of the property, had been reminded of his right of first refusal, and had been invited to contact the lessor or the lessor's real estate agent to discuss the matter further. *Id.* at 221-22. In other words, the appellant had received actual notice of the proposed sale of the property and an opportunity to purchase it. *Id.* at 221. The Court agrees with Plaintiffs that the court's reasoning in *Comeaux* does not support the conclusion that apprehension constitutes actual notice of a demand on a bond. (Doc. 66). In addition, such a reading of the term "notice" does not appear to comport with the plain meaning of the term, especially given that the required notice to indemnitors could not possibly be accomplished by apprehension. Even if Insurer Defendants' interpretation of the term "notice" were a reasonable one, so as to render the notice provision ambiguous, the interpretation of the ambiguity becomes an issue of fact.[12] As such, Insurer Defendants' argument fails.

Insurer Defendants next appear to claim that Plaintiffs have failed to allege a necessary

---

[12] To the extent that Insurer Defendants rely on the full text of the surety bond contract for their authority to give notice by apprehension, the Court notes that reliance on evidence outside the pleadings is improper at this stage of the proceedings. *E.g.*, *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).

element of the cause of action for breach of contract–that is, that Plaintiffs suffered damages as a result of any alleged breach.  (Doc. 54).  More specifically, Insurer Defendants posit that any lack of notice of a demand on a bond does not compromise Plaintiffs' immigration rights.  *Id.* Insurer Defendants claim that the deadlines to file motions to reopen or reconsider a bonded immigrant's removal order runs from the date of the removal order rather than the date of the bond demand.  *Id.*  In addition, Insurer Defendants claim that whether the order of removal is stayed pending appeal "has nothing to do with the status of the bond."  *Id.*

The Court recognizes that any lack of notice of a demand on a bond implicates the rights of the indemnitor as well as the bonded immigrant.  (Doc. 66).  Plaintiffs claim that the indemnitor may be beholden to the surety for the full amount of the bond, plus collection fees, if the bond is breached because the bonded immigrant fails to make a scheduled appearance.  *Id.*  As such, the indemnitor Plaintiffs can do little to protect their rights under the bond contracts without knowing the dates of all requested appearances.  *Id.*  Plaintiffs also point out that receiving notices of appearances for removal apart from being apprehended for removal is, in fact, critical to the bonded immigrant's ability to protect his or her immigration rights.  *Id.*  More specifically, Plaintiffs' Complaint alleges that the right to file a motion to reopen or reconsider a bonded immigrant's removal order is lost if the immigrant is physically removed from the United States before such motion is filed, or if filed, before it is adjudicated.  (Docs. 66, 72 at ¶ 53 (citing 8 C.F.R. § 1003.2(d)).  In addition, Plaintiffs allege that the Board of Immigration Appeals ("BIA"), as a matter of policy, will not consider an application for a stay of removal unless and until the applicant is in the physical custody of DHS.  (Docs. 66, 72 at ¶ 53).  Plaintiffs maintain that in the cases of Mexican nationals living near the U.S.-Mexico border, such as the named Plaintiffs in the present action, immigrants can be, and often are, physically removed within

hours of being taken into custody. *Id.* This reality therefore renders the stay provisions illusory unless the immigrant has advance notice of a DHS demand on the bond for removal so that the immigrant may prepare to apply for an emergency stay with the BIA before being taken into custody. *Id.* Moreover, Plaintiffs allege that despite the pendency of an appeal before the BIA and a stay of the removal order, DHS occasionally makes a demand on an immigrant's bond for removal. (Docs. 66, 72 at ¶ 52). If the removal of the immigrant is accomplished, the immigrant's appeal before the BIA will be deemed abandoned and the immigrant will have lost the right to judicial review of the resulting BIA decision for failure to exhaust his or her administrative remedies. *Id.* (citing 8 C.F.R. § 1003.4; 8 U.S.C. § 1252(d)). For all of these reasons, the Court rejects Insurer Defendants' argument that their alleged failure to provide notice of demands on bonds is unrelated to Plaintiffs' alleged damages.

Insurer Defendants next claim that Plaintiff Miguel Rubio and Plaintiff Alberta Rubio's breach of contract allegations are made only upon "information and belief" and do not set forth the factual basis for such belief. (Doc. 54). As such, these Plaintiffs' allegations are insufficient to state a claim. *Id.* Although allegations may be based upon information and belief, a complaint must set forth a factual basis for such belief. *E.g.*, *U.S. ex rel. Doe v. Dow Chem. Co.*, 343 F.3d 325, 329 (5th Cir. 2003). Here, Plaintiffs allege upon information and belief that the bonding company with which Alberta posted a surety bond on Miguel's behalf was Aaron Bonding, acting as an agent for Insurer Defendants. (Docs. 66, 72 at ¶ 73). Plaintiffs maintain that whether Aaron Bonding was the surety contracted with is a fact within Bonding Defendants' knowledge and that Plaintiffs should therefore be allowed to obtain discovery to verify whether Aaron Bonding posted the surety bond for Miguel. (Doc. 66). In addition, Plaintiffs claim that their Complaint provides the factual basis for the belief that Aaron Bonding was the surety at

issue, as Plaintiffs' Complaint states that all named Plaintiffs live in the Rio Grande Valley and that Aaron Bonding did substantial business in this location. *Id.* (citing Plaintiffs' Complaint at ¶¶ 10, 16). Plaintiffs admit that their Complaint also alleges upon information and belief that the bonding company did not apprehend Miguel until after the date of the INS-scheduled appearance, thus causing the bond to be breached. (Docs. 66, 72 at ¶ 75). According to Plaintiffs, Miguel's scheduled appearance date is also within the knowledge of Bonding Defendants and easily could be verified by them. (Doc. 66). In addition, Plaintiffs indicate that it can be inferred that Aaron Bonding apprehended Miguel after the scheduled appearance date and that the bond was breached from Plaintiffs' allegation that the bonding company demanded that Alberta pay it the full amount of the bond, plus a collection fee, because the bond had been breached. (Docs. 66, 72 at ¶ 76). The Court agrees that Plaintiffs have set forth a sufficient factual basis for their allegations made upon information and belief with respect to the breach of contract claims of Plaintiffs Miguel and Alberta Rubio. As such, the Court rejects Insurer Defendants' 12(b)(6) challenge to the Rubios' breach of contract claims against them.

Finally, Insurer Defendants contend that Plaintiff Petra Carranza de Salinas's breach of contract claim is not ripe for review, as Plaintiffs' Complaint admits that Ms. Salinas has suffered no breach of contract or damages resulting therefrom. (Doc. 54 (citing Plaintiffs' Complaint at ¶ 80)). Specifically, Plaintiffs allege that "[a]lthough, to [Plaintiff Salinas's] knowledge, the DHS has not yet issued a demand on her bond, should it do so and should the Bonding Defendants continue their practice of breaching their bond contracts by failing to provide notice of DHS demands on Surety Bonds to either the Bonded Immigrant (here, Ms. Salinas) or the Indemnitor (here, Mr. De La Rosa), Ms. Salinas will likely lose the money she has paid into her Build-Up Account with Aaron Bonding." (Doc. 72 at ¶ 80). As noted *supra*, a

plaintiff must show that a contract has been breached and that damages have resulted from the breach in order to maintain a breach of contract cause of action under Texas law.  However, Plaintiffs argue that because they seek both damages and injunctive and declaratory relief, Plaintiff Salinas's claim is not subject to dismissal for lack of ripeness.  (Doc. 66).  Plaintiffs maintain that "[b]ecause the Bonding Defendants have made it their policy to enter the bonding contracts with the intent that they will not fulfill their obligations under those contracts, and because they routinely and as a matter of policy breach those contracts, Salinas has every reason to believe that the Bonding Defendants will fail to provide her with notice of a call on her bond." *Id.*  Furthermore, Plaintiffs claim that because a failure to provide notice of a bond demand to Plaintiff Salinas would compromise her ability to remain in the United States and perhaps result in her removal, she has no adequate remedy at law for Insurer Defendants' breach of contract and, thus, prospective relief is appropriate.  *Id.*

The Court notes that Plaintiffs' Complaint requests on behalf of the bonded immigrant Plaintiffs, which include Ms. Salinas, an injunction requiring Bonding Defendants, directly or through their agents, to make good faith efforts to provide actual, timely, and reasonable notice to the bonded immigrants and indemnitors of any and all DHS demands on bonds.  (Doc. 72 at ¶ 185).  Under Texas law, contractual rights generally are not enforced by injunction because inadequate remedy at law and irreparable injury are rarely shown when a breach of contract suit is available.  *Butnaru v. Ford Motor Co.* , 84 S.W.3d 198, 211 (Tex. 2002); *Canteen Corp. v. Republic of Texas Props., Inc.* , 773 S.W.2d 398, 401 (Tex.App.Dallas 1989, no writ).  The available legal remedy must be as "plain and adequate, or in other words, as practical and efficient to the ends of justice and its prompt administration as the remedy in equity." *Brazos River Conservation & Reclamation Dist. v. Allen* , 141 Tex. 208, 216 (Tex. 1943); *Universal*

*Health Servs., Inc. v. Thompson*, 24 S.W.3d 570, 577 (Tex.App.-Austin 2000, no pet.).  An injury is "irreparable" if the injured party cannot be adequately compensated in damages or if damages cannot be measured by any certain pecuniary standard.  *Butnaro*, 84 S.W.3d at 204; *Canteen Corp.*, 773 S.W.2d at 401.  Here, Plaintiffs have specifically pled that "many members" of the proposed bonded immigrant class to which Ms. Salinas belongs  "have been damaged because their ability to remain in the United States has been compromised" and "many have been deported and others unnecessarily confined" due to Bonding Defendants' alleged breaches of the surety contracts.  (Doc. 72 at ¶ 135).  Plaintiffs contend that Plaintiff Salinas faces such injuries should Insurer Defendants fail to provide her with notice of a bond demand.  (Doc. 66).  The Court finds that should Ms. Salinas be removed as a result of Bonding Defendants' lack of notice of a DHS demand on her bond, she would be without a remedy as practical and efficient to the ends of justice as injunctive relief.  In addition, removal and unnecessary confinement are injuries difficult to measure according to any pecuniary standard.  As such, Plaintiff Salinas's request for prospective relief with respect to her breach of contract claim is appropriate.

For the foregoing reasons, Plaintiffs' breach of contract claims are not subject to dismissal.

## 2.  Fraud and Negligent Misrepresentation/Gross Negligence

Insurer Defendants first move to dismiss Plaintiffs' fraud and negligent misrepresentation claims on the grounds that Plaintiffs cannot bring tort claims that sound only in contract.  (Doc. 34).  Plaintiffs counter that Texas law allows a party fraudulently induced to sign a contract to sue in contract or tort; as such, Plaintiffs' claims are not subject to dismissal.  (Doc. 38).

The longstanding rule in Texas is that non-performance under a contract creates liability only for breach of contract.  *Crawford v. Ace Sign, Inc.*, 917 S.W.2d 12, 13 (Tex. 1996); *Southwestern Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494-95 (Tex. 1991).  However, the Texas Supreme

Court has also found that Texas law has long imposed a tort duty, independent of any contract, to abstain from inducing another to enter into a contract through the use of fraud. *Formosa Plastics Corp., USA v. Presidio Eng. & Contr., Inc.*, 960 S.W.2d 41, 46 (Tex. 1998)(rejecting application of *DeLanney* to preclude fraudulent inducement claim). Tort damages are recoverable for a fraudulent inducement claim irrespective of whether the fraudulent representations are later subsumed in the contract or whether the plaintiff suffers an economic loss related to the subject matter of the contract. *Formosa*, 960 S.W.2d at 47; *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 729-30 (5th Cir. 2003).

In asserting their cause of action for fraud, Plaintiffs specifically allege that Bonding Defendants, "*[i]n the course of entering into uniform surety agreements*, represented to [indemnitors] that it would provide notice of all appearances requested by the DHS of which Aaron Bonding received notice to [the indemnitors] with which it contracted and to the Bonded Immigrants on the surety contracts." (Doc. 72 at ¶ 138 (emphasis added)). Plaintiffs further allege that Bonding Defendants "made these representations *with no intention of ever providing this notice*." (Doc. 72 at ¶ 142 (emphasis added)). That these allegedly fraudulent representations were subsumed in the surety contract do not preclude Plaintiffs' fraud claim under Texas law. *See Formosa*, 960 S.W.2d at 46-47 (fraud claim can be based on promise made with no intention of performing, irrespective of whether promise is later subsumed in contract).[13] For the foregoing reasons, the Court finds that Plaintiffs' fraud claim is not subject to dismissal.

Insurer Defendants next argue for the dismissal of Plaintiffs' negligent misrepresentation

---

[13] In their reply to Plaintiffs' opposition to the Motion to Dismiss, Insurer Defendants acknowledge the holding in *Formosa*, *supra*, but claim that Plaintiffs have not alleged that any misrepresentation by Insurer Defendants induced them to enter into any contract, or that Insurer Defendants made any representations at all to Plaintiffs prior to the execution of any contract. (Doc. 53). Insurer Defendants therefore claim that Plaintiffs have not successfully pled a cause of action for fraudulent inducement. *Id.* Plaintiffs' Complaint, however, speaks for itself.

claim on the grounds that such claim does not involve damages independent of contract damages. (Doc. 53).  In *D.S.A., Inc. v. Hillsboro Indep. Sch. Dist.*, 973 S.W.2d 662, 663 (Tex. 1998), the Texas Supreme Court noted that "the *Formosa* opinion's rejection of the independent injury requirement in fraudulent inducement claims does not extend to claims for negligent misrepresentation or negligent inducement."  Therefore, in order to recover on their negligent misrepresentation claim, Plaintiffs must show that they suffered an injury independent of their damages for breach of contract.  The Court notes that Plaintiffs' Complaint requests identical damages for their breach of contract and negligent misrepresentation claims–that is, (1) damages equal to the value of all monies paid or other items given by Plaintiffs to Bonding Defendants as non-refundable, up-front frees when entering the surety contracts; (2) damages equal to the value of all monies paid or other items given by Plaintiffs to Bonding Defendants, including amounts paid into the Build-Up Accounts; and (3) a return of any collateral seized by Bonding Defendants to satisfy the breached bonds.  (Doc. 72 at ¶¶ 122, 124, 136, 162-64).  As such, the Court finds that Plaintiffs have failed to allege an injury independent of their damages for breach of contract and that their negligent misrepresentation/gross negligence claim is subject to dismissal.

### 3.  Intentional Infliction of Emotional Distress

Insurer Defendants next request the dismissal of the individual, non-class claims for intentional infliction of emotional distress ("IIED") brought by Plaintiffs Juana and Aracely Zamora and Irma and Manuel Sandoval against Defendant Santiago Sol, acting as an agent for Aaron Bonding.  (Doc. 34).

To recover damages for IIED under Texas law, a plaintiff must establish that: (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the

resulting emotional distress was severe.  *Hoffman-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 445 (Tex. 2004).  Conduct is "extreme and outrageous" if it is "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Id.* (quoting *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex. 1993)).  Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.  *Hoffman-La Roche*, 144 S.W.3d at 445.  In addition, acts specifically within a defendant's legal rights cannot constitute outrageous behavior, although the manner in which they are carried out may give rise to liability.  *See Wornick Co. v. Casas*, 856 S.W.2d 732, 735 (Tex. 1993); *see also Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 817 n. 20 (Tex. 2005)(quoting Restatement (Second) of Torts § 46 cmt. g)("The actor is never liable, for example, where he has done no more than to insist upon his legal rights in a *permissible* way, even though he is well aware that such insistence is certain to cause emotional distress.")(emphasis added).  Where reasonable minds may differ as to whether the defendant's conduct is sufficiently extreme and outrageous, the IIED claim is presented to the jury.  *Hoffman-La Roche*, 144 S.W.3d at 445.

Plaintiffs' Complaint alleges that Defendant Sol went to the home of Plaintiff Juana Zamora in Weslaco, Texas, where he falsely asserted that he had a warrant for the removal of Plaintiff Aracely Zamora.  According to Plaintiffs, Defendant Sol also insisted to Aracely's counsel over the phone that Aracely surrender to Defendant Sol, rather than to the Harlingen INS office, and he threatened both Juana and Aracely's counsel with criminal charges for harboring a fugitive if they refused.  Plaintiffs further allege that despite Aracely's voluntary surrender to the Harlingen INS office, Defendant Sol returned to the homes of Juana and Aracely and to the homes of other relatives several times over the next two days, even after being advised that Aracely had been

allowed to leave the Harlingen INS office.  Plaintiffs contend that Defendant Sol harassed and scared Juana so severely that she refused any contact with Aracely.  In addition, Aracely was forced to spend several days at various locations out of fear for Defendant Sol.  Plaintiffs claim that these incidents caused severe emotional distress for both Juana and Aracely Zamora.  (Doc. 72 at ¶¶ 200-10).

Plaintiffs' Petition and Complaint also alleges that Defendant Sol attempted to "pick up" Plaintiff Manuel Sandoval.  The following month, Plaintiff Irma Sandoval received a demand from Aaron Bonding for $1,000.00 on the grounds that her father, Manuel, had failed to report for deportation and had therefore breached the bond.  Plaintiffs claim that when Manuel later called Aaron Bonding, he was threatened that if he did not pay this amount, an agent of Aaron Bonding would pick him up and physically take him to Mexico, thereby effectuating his deportation.  According to Plaintiffs, this threat caused severe emotional distress for both Irma and Manuel Sandoval.  (Doc. 72 at ¶¶ 211-17).

Insurer Defendants contend that even if Plaintiffs' allegations are true, Defendant Sol's actions were within his legal rights under the bond contract and cannot therefore constitute outrageous behavior as a matter of law.  (Doc. 34).  In addition, Insurer Defendants argue that the alleged actions of Defendant Sol do not rise to the level of conduct required under Texas law to state a claim for intentional infliction of emotional distress.[14]  Plaintiffs counter that Defendant Sol did not have the legal right to enforce the contractual terms of the surety contract because Bonding Defendants materially breached the contract first.  (Doc. 38).  In addition, Plaintiffs argue that even assuming Defendant Sol had the legal right to re-arrest these Plaintiffs, he did not

---

[14]    Insurer Defendants also state, without more, that Plaintiffs have not alleged that Insurer Defendants should be held vicariously liable for the conduct of Defendant Sol.  (Doc. 53).  However, the Court notes that Plaintiffs have alleged the existence of agency relationships between Defendant Sol and Aaron Bonding and between Aaron Bonding and Insurer Defendants.  (Doc. 72 at ¶¶ 1, 16, 202, 213).

have the legal right to lie, harass, and threaten criminal charges and/or their deportation.  (Doc. 38).

As a question exists as to whether Defendant Sol had a legal right under the surety contract to re-arrest the individual Plaintiffs, the Court cannot pronounce that Plaintiffs' IIED claims fail on such basis.  In addition, given that Plaintiffs Juana and Aracely Zamora have alleged that in the course of attempting to re-arrest Aracely, Defendant Sol made false statements, threatened criminal charges, and repeatedly harassed Juana and Aracely despite knowing that Aracely had surrendered to the Harlingen INS office and had been released, the Court finds that reasonable minds may differ as to whether Defendant Sol's conduct was extreme and outrageous.  However, the Court cannot say that reasonable minds may differ as to whether Defendant Sol's alleged conduct with respect to Plaintiffs Irma and Manuel Sandoval constitutes IIED.  Although Plaintiffs allege that Aaron Bonding demanded $1,000.00 from Irma due to her father's breached bond, Plaintiffs do not specify that Defendant Sol made such demand.  In addition, Plaintiffs allege that Manuel called Aaron Bonding and "was threatened" during the call but do not allege that Defendant Sol made the threats.  Rather, Plaintiffs only allege that Defendant Sol attempted to "pick up" Manuel.  Such conduct cannot reasonably be viewed as "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *See Hoffman-La Roche*, 144 S.W.3d at 445.

For the foregoing reasons, the Court finds that the IIED claims of Plaintiffs Juana and Aracely Zamora survive Insurer Defendants' Motion to Dismiss.  However, the IIED claims of Plaintiffs Irma and Manuel Sandoval are subject to dismissal.

### 4.  False Imprisonment

Finally, Insurer Defendants move to dismiss Plaintiff Miguel Rubio's individual, non-class claim for false imprisonment against Aaron Bonding, acting as an agent for Insurer Defendants. (Doc. 34).

The essential elements of a false imprisonment claim in Texas are: (1) willful detention; (2) without consent; and (3) without authority of law. *Sears, Roebuck & Co. v. Castillo*, 693 S.W.2d 374, 375-76 (Tex. 1985); *Gladden v. Roach*, 864 F.2d 1196, 1201 (5th Cir. 1989).  A detention may be accomplished by any means that restrains a person from moving from one place to another. *Randall's Food Markets, Inc. v. Johnson*, 891 S.W.2d 640, 644-45 (Tex. 1995); *Reicheneder v. Skaggs Drug Center*, 421 F.2d 307, 310 (5th Cir. 1970).  Plaintiffs allege that Plaintiff Miguel Rubio's mother, Alberta Rubio, contracted with Aaron Bonding for the posting of a surety bond on her son's behalf.  According to Plaintiffs, Aaron Bonding did not inform Mr. Rubio or the indemnitor, Alberta Rubio, of a DHS demand on the bond of which it received notice.  Plaintiffs further allege that Aaron Bonding did not apprehend Mr. Rubio until after the surrender date, therefore allowing the bond to be breached.  Plaintiffs claim that an agent of Aaron Bonding physically detained Mr. Rubio and surrendered him to INS.  According to Plaintiffs, Mr. Rubio was forced to remain in detention for nearly five months until he obtained a new surety bond from a different bond company.  (Doc. 72 at ¶¶ 218-24).

Insurer Defendants assert that Mr. Rubio's false imprisonment claim is subject to dismissal because his detention was lawful.  (Docs. 34, 53).  Insurer Defendants first claim that DHS, not an agent of Insurer Defendants, actually imprisoned Mr. Rubio based on its determination that Mr. Rubio had breached the conditions of his bond.  (Doc. 34).  Insurer Defendants also claim that even assuming that an agent of Insurer Defendants apprehended Mr. Rubio, his apprehension

was legal and justified under the bond contract due to Mr. Rubio's breach of the bond.  (Doc. 53).  Plaintiffs counter that their Complaint specifically alleges that an agent of Bonding Defendants physically detained Mr. Rubio.  (Doc. 38).  Plaintiffs further claim that by failing to provide Mr. Rubio with notice of a call on his bond, as required by the surety contract, Bonding Defendants relinquished whatever right they otherwise had to detain Mr. Rubio.  *Id.*

The Court notes that even if the facts alleged by Plaintiffs indicate that an agent for Insurer Defendants physically detained Mr. Rubio for a short time–that is, for the purpose of delivering him into the custody of INS–this means of restraining Mr. Rubio's movement can  form the basis of a false imprisonment claim under Texas law.  *See Randall's Food Markets* , 891 S.W.2d at 645.  In addition, Plaintiffs have stated a claim that the detention to which Mr. Rubio was subjected by Insurer Defendants' agent was without legal authority, as Mr. Rubio was not required to surrender to Bonding Defendants subsequent to Bonding Defendants' alleged material breach of the surety contract.  *See* , *e.g.* , *Mustang Pipeline Co., Inc. v. Driver Pipeline Co. Inc.* , 134 S.W.3d 195, 196 (Tex. 2004)(when one party to a contract commits a material breach of that contract, other party discharged or excused from future performance).  As such, the Court rejects Insurer Defendants' challenge to Plaintiff Miguel Rubio's false imprisonment claim.

## IV.  Conclusion

For the foregoing reasons, the Court determines that it has supplemental jurisdiction to consider Plaintiffs' claims against Insurer Defendants.  Also for the above stated reasons, the Court hereby GRANTS Insurer Defendants' Motion to Dismiss Plaintiffs' class-wide claim for negligent misrepresentation/gross negligence and the intentional infliction of emotional distress claims of Plaintiffs Irma and Manuel Sandoval and DENIES Insurer Defendants' Motion to

Dismiss Plaintiffs' class-wide claims for breach of contract and fraud.  The Court further DENIES Insurer Defendants' Motion to Dismiss the intentional infliction of emotional distress claims of  Plaintiffs Juana and Aracely Zamora and the false imprisonment claim of Plaintiff Miguel Rubio.

SO ORDERED this 15th day of September, 2006, at McAllen, Texas.

Randy Crane
United States District Judge