UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| ARACELY ZAMORA-GARCIA, *et al*, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. M-05-331 |
| | § | |
| MARC MOORE, *et al*, | § | |
| | § | |
| Defendant. | § | |

**ORDER DENYING INSURER DEFENDANTS' MOTION TO TRANSFER VENUE**

**I. Introduction**

Now before this Court is Insurer Defendants' Motion to Transfer Venue.  (Doc. 79).

Defendant Fairmont Specialty Insurance Company ("Fairmont"), f/k/a Ranger Insurance

Company, and Defendant Stonington Insurance Company ("Stonington"), f/k/a Nobel Insurance

Company, filed the instant motion pursuant to 28 U.S.C. § 1404(b) or, in the alternative, 28

U.S.C. § 1404(a).  *Id.*  After carefully considering Defendants' Motion in light of relevant case

law, the Court has determined that Defendant's Motion should be denied, as discussed below.

The present case involves both individual and class-wide claims against Federal

Defendants,[1] Bonding Defendants (which include Defendants Fairmont and Stonington),[2] and

Defendant Santiago Sol arising out of these Defendants' alleged mishandling of surety and cash

---

[1] Federal Defendants include Marc Moore, District Director for Interior Enforcement, Department of Homeland Security; and Alberto Gonzales, U.S. Attorney General, The United States of America. (Doc. 114 at ¶¶ 13-15).  Plaintiffs sued Federal Defendants in their official capacity.  *Id.*

[2] In addition to Defendants Fairmont and Stonington, Bonding Defendants include Michael W. Padilla, in his capacity as Independent Administrator with Will Annexed of the Estate of Don Vannerson, d/b/a Aaron Federal Bonding Agency.  (Doc. 114 at ¶¶ 16-18).

bonds secured by immigrants during the pendency of their removal proceedings.  (Doc. 114).[3]
As against Defendants Fairmont and Stonington ("Insurer Defendants"), Plaintiffs seek
individual and class-wide relief for breach of contract.  *Id.* at ¶¶ 112-33.  More specifically,
Plaintiffs allege that Insurer Defendants, through their agent, Aaron Federal Bonding Agency
("Aaron Bonding"),[4] enter into surety contracts with the indemnitor Plaintiffs,[5] wherein Insurer
Defendants agree to post surety bonds for the surety bonded immigrant Plaintiffs with the
Department of Homeland Security ("DHS")(or its predecessor entity in relevant respects, the
Immigration and Naturalization Service, or "INS") to enable the surety bonded immigrants to
leave confinement while their removal proceedings are pending.  *Id.* at ¶¶ 1-2.  For these
services, the indemnitors pay up-front, non-refundable fees equal to half of the total bond and
agree to indemnify Insurer Defendants for the full amount of the bond should the bond be
breached for failure of the bonded immigrant to attend a DHS-scheduled appearance.  *Id.* at ¶ 2.
Moreover, Insurer Defendants require the indemnitors to pay, or guarantee the payment of,
roughly half the amount of the bond in monthly installments into a "Build-Up Fund," or
collateral account, that Insurer Defendants may draw from in paying on the bond to DHS in the
event the bond is breached.  *Id.*  According to Plaintiffs, Insurer Defendants contractually agree
to provide notice to both the indemnitors and bonded immigrants of all appearances scheduled
by DHS of which Insurer Defendants receive notice but "never provide advance notice of DHS-
scheduled appearances" to either, thus resulting in bond breaches.  *Id.* at ¶¶ 2, 5.  In addition,

---

[3]   As against Federal Defendants, Plaintiffs also seek an injunction on their own behalves and on
behalf of the class they seek to represent requiring that, upon request of the class member, and in the
absence of individual factors which would warrant the refusal to do so, Federal Defendants place said
class members under Orders of Supervision.  (Doc. 114 at ¶ 136).

[4]   Plaintiffs allege that Aaron Bonding is sometimes known as U.S. Immigration Bonds and
Services.  (Doc. 114 at ¶ 1).

[5]   Plaintiffs allege that the indemnitor Plaintiffs are usually friends or relatives of the immigrants in
removal proceedings.  (Doc. 114 at ¶ 2).

Plaintiffs allege that although the surety bond contracts require Insurer Defendants to return the collateral posted after Federal Defendants cancel a bond, Insurer Defendants' policy is to silently retain the collateral. *Id.* at ¶ 8. Plaintiffs claim that Insurer Defendants' failure to provide notice of DHS-scheduled appearances and failure to return the collateral posted in the event of bond cancellation constitute actionable breaches of contract for which Plaintiffs seek damages and equitable relief.

Insurer Defendants now assert that the surety bond contracts at issue in the present action all include valid and enforceable forum selection clauses, wherein Plaintiffs agreed that any action seeking enforcement of the contracts must be brought in Harris County, Texas. (Doc. 79). More specifically, the forum selection clause states that "[a]ll obligations of the parties created by this agreement are to be performed in Harris County, Texas and venue of any suit to enforce this agreement shall lie in Harris County, Texas." (Doc. 79, Exh. A). Insurer Defendants claim that because the surety bonded immigrant Plaintiffs have asserted that they are third party beneficiaries to the surety contracts, they are also bound by the forum selection clause. (Doc. 79). In sum, Insurer Defendants assert that the existence of the forum selection clause militates in favor of transferring the entirety of this case to the Southern District of Texas, Houston Division, which encompasses Harris County, Texas. *Id.* Insurer Defendants further argue that the private and public interest factors to be weighed in determining the propriety of a venue transfer, to the extent that they apply, favor a transfer of venue from the Southern District of Texas, McAllen Division to the Houston Division. *Id.*

Plaintiffs do not dispute the existence or applicability of the forum selection clause. (Doc. 81). Rather, Plaintiffs submit that the Court should decline to transfer venue based on Insurer Defendants' delay in filing their Motion. *Id.* In addition, Plaintiffs argue that the balance of

factors to be considered by the Court in conducting its analysis under 28 U.S.C. § 1404 weighs in favor of retaining the case in this Division.  *Id.*

## II.  Analysis and Conclusion

Pursuant to 28 U.S.C. § 1404(b), "[u]pon motion,...any action, suit, or proceeding of a civil nature...may be transferred, in the discretion of the court, from the division in which pending to any other division in the same district."  In determining whether to exercise its discretion in favor of transfer to another division within this district, the Court will consider the same factors to be applied in determining whether to transfer venue pursuant to 28 U.S.C. § 1404(a).  *See*, *e.g.*, *Tapia v. Dugger*, 2006 WL 2620530 at *3 (W.D.Tex. 2006)("In choosing whether to exercise the discretion allowed by section 1404(b), the Court will base its decision on the established standard governing section 1404(a) transfers."); *Mohamed v. Mazda Motor Corp.*, 90 F.Supp.2d 757, 768 (E.D.Tex. 2000)(indicating that § 1404 analysis remains the same "regardless whether the litigant moves for *inter* or *intra* district transfer")(emphasis in original). Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

"Section 1404(a) places discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)(quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).  In conducting its § 1404(a) analysis, the court must weigh in balance a number of private and public interest factors, none of which is dispositive.  *Action Indus., Inc. v. U.S. Fidelity & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004).  The private interests include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory

process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *Id.* at 340 n.6.[6]  The public interests include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws.  *Id.*  In  addition, the Supreme Court has recognized that the presence of a forum selection clause is a "significant factor that figures centrally in the district court's calculus," requiring the court to consider "the convenience of [the forum] given the parties' expressed preference for that venue, and the fairness of transfer in light of the forum-selection clause and the parties' relative bargaining power." *Stewart*, 487 U.S. at 29.[7]  The Supreme Court also noted that "[i]t is conceivable in a particular case...that because of [the private and public interest factors] a district court acting under 1404(a) would refuse to transfer a case notwithstanding the counterweight of a forum-selection clause...."  *Id.* at 30-31.  In short, a forum selection clause "should receive neither dispositive consideration...nor no consideration..., but rather the consideration for which Congress provided in § 1404(a)." *Id.* at 31.

District courts have consistently interpreted Fifth Circuit case law to require a party moving to transfer venue pursuant to § 1404(a) to bear the burden of demonstrating to the court that it should transfer the case. *See*, *e.g.*, *Fisher v. Nabors Drilling USA, Inc.*, 2006 WL 2882799 at *1 (S.D.Tex. 2006)(citing *Peteet v. Dow Chem. Co.*, 868 F.2d 1428, 1436 (5th Cir. 1989); *Time, Inc.*

---

[6]  The Fifth Circuit and district courts within this Circuit have indicated that the "place of alleged wrong" is also a private interest factor to be considered.  *See In Re Horseshoe Entm't*, 337 F.3d 429, 433 (5th Cir. 2003); *Von Graffenreid v. Craig*, 246 F.Supp.2d 553, 562 (N.D.Tex. 2003);  *McGinnis v. Eli Lilly & Co.*, 181 F.Supp.2d 684, 687 (S.D.Tex. 2002).

[7]  Generally, the plaintiff's choice of forum figures substantially in the district court's calculus, as well; however, district courts within this Circuit have suggested that this factor is accorded less weight where a forum selection clause exists.  *Wiggins v. Carnival Corp.*, 2005 WL 2086043 at *2 (W.D.Tex. 2005); *Williams v. M/V Jubilee*, 431 F.Supp.2d 677, 680 (S.D.Tex. 2003); *Watson v. John K. Burch Co.*, 2003 WL 21145744 at *1 (N.D.Tex. 2003).

*v. Manning* , 366 F.2d 690, 698 (5ᵗʰ Cir. 1966)); *Empty Barge Lines II, Inc. v. Dredge Leonard Fisher* , 441 F.Supp.2d 786, 789 (E.D.Tex. 2006)(citing same); *Borninski v. Williamson* , 2003 WL 21468533 at \*5 (N.D.Tex. 2003)(citing *Peteet* , 868 F.2d at 1436).  As noted by Insurer Defendants, district courts within this Circuit have also reasoned that where a forum selection clause exists, the burden shifts to the non-movant to show that transfer to the selected forum would be inappropriate.  *See* , *e.g.* , *Berg v. Sage Envtl. Consulting of Austin, Inc.* , 381 F.Supp.2d 552, 557 (M.D.La. 2005); *Watson* , 2003 WL 21145744 at \*2; *Columbia Energy Servs. Corp. v. TDC Energy Corp.* , 2002 WL 272382 at \*3 (E.D.La. 2002).  However, these courts have not specifically supported such reasoning with Fifth Circuit precedent, and in fact other district courts within this Circuit have declined to shift the burden where the movant relies upon the existence of a forum selection clause in moving to transfer venue.  *See id.* ; *see also  Rossco Holdings, Inc. v. Best Western Int'l Inc.* , 2006 WL 1007474 at \*3 (S.D.Tex. 2006); *Williams* , 431 F.Supp.2d at 679-82; *Bonded Inspections, Inc. v. Northrop Grumman Corp.* , 1998 WL 185518 at \*1 (N.D.Tex. 1998).  As the Fifth Circuit has not addressed this precise issue, the Court declines to disturb the Fifth Circuit's placement of the burden on the movant to show that transfer is warranted.  *See Watson* , 2003 WL 21145744 at \*2 (recognizing that Fifth Circuit has not yet decided whether existence of forum selection clause shifts burden of persuasion in transfer analysis).

## A.  Delay in Filing Motion to Transfer Venue

As an initial matter, the Court considers Plaintiffs' contention that the Court should decline to transfer venue based on Insurer Defendants' delay in moving to transfer.  (Doc. 81).  The Court acknowledges that parties seeking to transfer venue must act with "reasonable promptness."  *Peteet* , 868 F.2d at 1436 (quoting 15 C. Wright, A. Miller & E. Cooper, *Federal*

*Practice and Procedure* § 3844, at 335-37). Recognizing that "[c]ourts have considered a party's delay in denying a motion to transfer," the Court in *Peteet* noted that a motion to transfer venue filed eighteen months after the remand of the case to the district court "would have caused yet another delay in this protracted litigation." *Id.* at 1436. District courts within this Circuit have likewise recognized that a party's delay in filing a motion to transfer venue, and the ensuing delay in litigation that could result if transfer is granted, can either constitute a factor in the district court's transfer analysis or serve as the sole basis for the denial of transfer. *Moto Photo, Inc. v. K.J. Broadhurst Enters., Inc.*, 2003 WL 298799 at *5 (N.D.Tex. 2003)(filing of motion to transfer after parties had exchanged initial disclosures, amended their pleadings, and conducted preliminary discovery created possibility of undue delay if case were to be transferred and could be denied on that basis alone); *FTC v. Multinet Marketing, LLC*, 959 F.Supp. 394, 395-96 (N.D.Tex. 1997)(denying motion to transfer filed seven months after plaintiffs' filing of action where "change in venue now is likely to upset the discovery and trial schedule and waste judicial resources"); *Am. Airlines, Inc. v. Rogerson ATS*, 952 F.Supp. 377, 384 (N.D.Tex. 1996)(denying motion where transfer would disrupt scheduling order and create "substantial possibility of delay...since this Court has had the case for some time and is already familiar with many of its details"); *but see Mohamed*, 90 F.Supp.2d at 760 (recognizing that motion to transfer must be made with reasonable promptness but finding that "there is absolutely no reason why a litigant seeking a Section 1404(a) transfer *must* so move before the original answer")(emphasis in original).

Here, Plaintiffs' allegations concerning the mishandling of immigration bonds commenced with the filing of the predecessor action to this case on April 16, 2002. *See Zamora-Garcia v. Trominski*, Southern District of Texas, McAllen Division, Case No. M-02-144 (Doc. 1). Insurer

Defendants were made party to these proceedings on September 30, 2005, at which time the Court rendered all decisions in the predecessor action final and appealable and severed Plaintiffs' Third Amended Petition and Class Action Complaint into the present action.  (Docs. 1, 2); *Zamora-Garcia v. Trominski*   (Docs. 150, 151).  In its order severing the present case from the predecessor action, the Court expressly noted that Plaintiffs "are now asserting new claims against new entities as well as reasserting claims against current parties."  *Zamora-Garcia v. Trominski*  (Doc. 151).  In other words, the present action essentially is a continuation of the predecessor action.

Insurer Defendants admit that they have engaged in "some discovery" since their entrance in the case.  (Doc. 87).  In addition, the record reveals that the parties filed a Joint Discovery Plan, the Court issued a Scheduling Order setting the case for trial in February 2007, and Insurer Defendants moved to dismiss Plaintiffs' claims against them prior to the June 19, 2006 filing of Insurer Defendants' Motion to Transfer Venue.  (Docs. 32, 36, 75, 79).[8]  Although Insurer Defendants did not file an answer prior to the filing of their Motion to Transfer, the danger certainly exists that uprooting a case over which this Court has gained substantial familiarity over the course of more than four years and sending it to another division would unreasonably delay the proceedings and waste judicial resources.  The Court declines to deny Insurer Defendants' Motion on this basis alone.  However, the Court concludes that the nearly nine month lapse of time between Insurer Defendants' entrance in the case and the filing of their Motion to Transfer, in addition to the delay and waste of judicial resources that may result if transfer is allowed, undoubtedly factor in the Court's overall analysis.

---

[8]  The Court granted in part and denied in part Insurer Defendants' Motion to Dismiss.  (Doc. 106).

**B.  Application of § 1404(a) Balancing Test**

The Court must now determine whether "convenience" and the "interest of justice" favor transfer to the Houston Division, in light of the private and public interest factors to be considered and the existence of the forum selection clause.  *See* 28 U.S.C. § 1404(a); *Stewart*, 487 U.S. at 29.

**1.  Private Interest Factors**

With regard to the private interest factors, Insurer Defendants contend that the location of the "sources of proof" in the present action favors litigating the case in the Houston Division. (Doc. 79).  According to Insurer Defendants, Plaintiffs have sought the production of almost 8,000 bond files, all of which are located in Houston.  *Id.*; (Doc. 79, Exs. B, C).  However, the Court recognizes that "[t]echnological advances in copying, storing, and transferring data...limit the weight to be given the accessibility and location of sources of proof in the § 1404(a) analysis."  *Tapia*, 2006 WL 2620530 at *4; *see also*, *e.g.*, *FCI USA, Inc. v. Tyco Elecs. Corp.*, 2006 WL 2062426 at *2 (E.D.Tex. 2006); *IBEW-NECA Southwestern Health & Benefit Fund v. B & J Purchasing Servs., Inc.*, 2006 WL 305772 at *3 (N.D.Tex. 2006).  In other words, such factor is given only "slight" weight or significance.  *See Tapia*, 2006 WL 2620530 at *4; *FCI USA*, 2006 WL 2062426 at *2.  Here, Insurer Defendants have not established that this factor weighs in favor of transfer.

In arguing that transfer to the Houston Division would be more convenient for the party and non-party witnesses in the present case, Insurer Defendants aver that Defendant Stonington is based in Addison, Texas and Defendant Fairmont is based in Houston; "[t]herefore, [Insurer Defendants'] witnesses will *likely* be in the Houston and Dallas area."  (Doc. 79; Doc. 79, Exs. B, C)(emphasis added).  Insurer Defendants further state that Aaron Bonding, the alleged agent

of Insurer Defendants, was headquartered in Houston but had a smaller office in Harlingen, Texas.  (Doc. 79; Doc. 79, Ex. D).  As such, Insurer Defendants submit that "[i]t is *conceivable* that there could be witnesses with knowledge of [Aaron Bonding's] bond practices in both locations."  (Doc. 79)(emphasis added).  Insurer Defendants do not specifically identify any witnesses who would be unwilling to travel to the McAllen Division for trial or who would find such travel and trial attendance cost-prohibitive.[9]   In addition, Insurer Defendants offer no evidence that the testimony of any witness could not be secured by compulsory process. Moreover, Insurer Defendants admit that witnesses with knowledge of Aaron Bonding's bond practices could be located in the Harlingen, Texas area–that is, in closer proximity to the McAllen Division than to Houston.  Additionally, Plaintiffs submit that out of the 37 persons listed in Insurer Defendants' Rule 26(a) disclosures as persons who may have discoverable information, 12 appear to reside in the McAllen area or in other locations within the Rio Grande Valley of Texas, whereas 13 live in or around Houston.  (Doc. 81; Doc. 81, Ex. C); *see* Fed.R.Civ.P. 26(a).  Plaintiffs also allege that all of the named Plaintiffs–also listed as persons with knowledge in Insurer Defendants' Rule 26(a) disclosures–reside in the Rio Grande Valley. (Doc. 81 (citing Doc. 72 at ¶ 10); Doc. 81, Ex. C).[10]

Here, the Court must also consider that Plaintiffs are bringing claims not only against Insurer Defendants but against other Defendants, as well.  Insurer Defendants contend that "Federal Defendants presumably would not have any problem with having witnesses present

---

[9]  Without more, Insurer Defendants state that one witness "with some knowledge of [Aaron Bonding's] business," Laura Cuayhuitl, is located in Houston and was recently deposed at Plaintiffs' counsel's office in Houston.  (Doc. 79; Doc. 79, Ex. E).

[10]  Insurer Defendants submit that Plaintiff Irma Sandoval testified in her deposition that she would not be inconvenienced if the case were transferred to Houston.  (Doc. 105; Doc. 105, Ex. F).  However, the testimony of one of more than a dozen named Plaintiffs is not sufficient to show that transfer would be more convenient for all witnesses concerned.

from the Houston office of [DHS]." (Doc. 79). However, in light of the fact that Federal Defendants have been parties to the predecessor and present actions in the McAllen Division for over four years, and given that "much of the wrongdoing alleged against the Federal Defendants arose out of the Harlingen office [of DHS/INS]," it is unlikely that the Houston Division would be more convenient for Federal Defendants' witnesses. (Doc. 81 (citing Doc. 72 at ¶¶ 34, 86, 93)). In sum, Insurer Defendants' general allegations regarding the location and convenience of witnesses add no weight to the balance in favor of transfer. *See*, *e.g.*, *Q West Energy v. Gen. Elec. Co.*, 1998 WL 872705 at *1 (N.D.Tex. 1998)("A...party [moving for transfer]...must do more than merely make general allegations that certain key witnesses are needed" and "must identify the key witnesses and outline the substance of their testimony.")

Insurer Defendants further argue that the "place of alleged wrong appears to weigh in favor of Houston, or at most would be neutral." (Doc. 79). Insurer Defendants recognize that Plaintiffs' claims against them stem from Insurer Defendants' alleged failure to perform under the surety contracts at issue; as such, Insurer Defendants argue that "[i]t is impossible to say that a non-event occurred at a particular place." *Id.* Insurer Defendants further contend that none of Insurer Defendants' decision-makers is located in the McAllen Division, although they admit that "[i]t is conceivable that there may have been a decision-maker of Aaron Bonding at its Harlingen office...." *Id.* In response, Plaintiffs submit that the named surety bond Plaintiffs resided in the McAllen area when they entered into the surety contracts at issue and "when the Bonding Defendants misrepresented their intention to fulfill their notice obligations under the terms of [the contracts]." (Doc. 81; Doc. 81, Ex. F). According to evidence submitted by Plaintiffs, certain Plaintiffs executed their bond contracts in Cameron County, Texas–that is, in a county adjacent to that which encompasses McAllen. (Doc. 81, Exs. D, E). Given that Insurer

Defendants cannot affirmatively show that the alleged wrongs committed by Insurer Defendants through their agent, Aaron Bonding, occurred closer in proximity to Houston than McAllen, the Court cannot find that such factor weighs in favor of transfer.

With regard to the Court's consideration of "all other practical problems that make trial of a case easy, expeditious, and inexpensive," Insurer Defendants contend that no delay would result should the case be transferred to the Houston Division.  (Doc. 79).  In support of such argument, Insurer Defendants submit that it is highly unlikely that the case will go to trial as scheduled in February 2007, given that either Plaintiffs or Insurer Defendants will "certainly" appeal an unfavorable class certification determination made by the district court.  (Docs. 79, 87).  Insurer Defendants also aver that Plaintiffs' amendments to their pleadings and their "lack of diligence" in prosecuting their claims have themselves caused delay, thus rendering suspect Plaintiffs' allegations of delay in the event of transfer.  (Docs. 87, 105).  The Court is hesitant to find that no delay would result based on the possibility of an appeal.  In addition, the Court notes that it has granted Plaintiffs leave to amend their pleading not to aid Plaintiffs in any "lack of diligence," but to refine and narrow the complicated issues in this case.[11]  The fact remains that Plaintiffs first brought their immigration bond claims in this Court more than four years ago.  *Zamora-Garcia v. Trominski*   (Doc. 1).  Shortly after, Plaintiffs named Aaron Bonding, Insurer Defendants' alleged agent, as a party.  *Zamora-Garcia v. Trominski*   (Doc. 2).[12]  During the course of litigation, Plaintiffs received discovery that prompted them to request the addition of Insurer Defendants as parties.  *Zamora-Garcia v. Trominski*   (Doc. 141).  As indicated in its

---

[11]  The Court further notes that Insurer Defendants were not opposed to Plaintiffs' most recent amendment, and in fact such amendment favored said Defendants, as it eliminated various extra-contractual causes of action against them.  (Docs. 108, 114).

[12]  The representative of the estate of Don Vannerson has since been substituted for Defendant Aaron Bonding.  (Doc. 72).

discussion of the timeliness of Insurer Defendants' Motion to Transfer, the Court finds that uprooting a more than four-year-old case and transferring it to another division, given that the Court has already ruled on numerous motions and invested a substantial amount time in reviewing the various parties' contributions to the extensive record, presents the danger of delay.

Insurer Defendants also argue that no unreasonable increase in costs would occur should the case be transferred to the Houston Division. (Doc. 79). Plaintiffs state, without more, that the cost of trial to Plaintiffs becomes almost prohibitive if they are forced to litigate the case in Houston. (Doc. 81). Plaintiffs also contend that Insurer Defendants have failed to establish how transfer of the case will spare unnecessary expense. *Id.* As the Court cannot determine from the record the costs associated with transfer, such factor is at best a neutral one.

Finally, although Insurer Defendants further support their argument that transfer to the Houston Division would be convenient by submitting that "[c]ounsel for the parties are located in both divisions at issue," the Fifth Circuit has explicitly held that "the convenience of counsel is not a factor to be assessed in determining whether to transfer a case under § 1404(a)." *In re Volkswagen AG* , 37 F.3d 201, 206 (5th Cir. 2004).[13]

## 2. Public Interest Factors

The parties agree that because Insurer Defendants request transfer to another division within this district, most of the public interest factors are not implicated. (Docs. 79, 81). In other words, the McAllen Division is as equipped to apply the law that governs this case as is the Houston  Division, and the Houston Division has no apparent "localized interest" in deciding the

---

[13] The Court also notes that Insurer Defendants repeatedly state that Plaintiffs have offered no "sworn testimony" that they would be inconvenienced by transfer. (Docs. 87, 105). However, the burden is not on Plaintiffs to demonstrate that transfer would be inconvenient. The Court has located no case law supporting Insurer Defendants' assertion that Plaintiffs must provide sworn testimony to defeat Insurer Defendants' Motion.

case.  With regard to "the administrative difficulties flowing from court congestion," neither party offers any statistics regarding the congestion of the Houston Division as opposed to the McAllen Division.  As such, the public interest factors add no weight to the balance in favor of transfer.

### 3.  The Forum Selection Clause

As explained *supra*, this Court may decline to transfer venue regardless of the existence of a forum selection clause if the Court determines that the selected forum would be neither convenient nor fair, based on the Court's analysis of the various § 1404(a) factors.  Here, as discussed above, none of the private and public interest factors adds weight to the balance in favor of transfer.[14]  In addition, the Court has already noted that the nearly nine month lapse of time between Insurer Defendants' entrance in the case and the filing of their Motion to Transfer, in addition to the delay and waste of judicial resources that may result if transfer is allowed, weigh against transfer.   Moreover, the Court cannot ignore that the surety contracts containing the forum selection clause at issue only form the basis of the claims against Bonding Defendants.  As against Federal Defendants, Plaintiffs complain of the mishandling of cash bonds and the denial of Orders of Supervision.  In addition, Plaintiffs have brought individual claims for intentional infliction of emotional distress against Defendant Sol.  The Court has already ruled that Plaintiffs' cash bond and Order of Supervision claims against Federal Defendants over which this Court has original jurisdiction and Plaintiffs' state law claims against Bonding Defendants and Defendant Sol clearly comprise but one constitutional case, as

---

[14]  The Court again notes that it must consider "the convenience of [the forum] given the parties' expressed preference for that venue, and the fairness of transfer in light of the forum-selection clause and the parties' relative bargaining power."  *Stewart*, 487 U.S. at 29.  No affirmative showing has been made that the parties had unequal bargaining power with respect to the surety contracts at issue.  (Docs. 81, 87).  However, this factor does not, in and of itself, mandate transfer.

they derive from Federal Defendants' bonding practices and the alleged lack of adequate notice of calls on bonds involved in such practices.  (Docs. 106, 109, 110).  As such, the Court held that it has supplemental jurisdiction over Plaintiffs' surety bond claims.  *Id.*  Where not all of the claims in this long-pending litigation relate to surety bonds, transferring the entirety of the case based solely on the presence of a forum selection clause in the surety contracts would not serve the interests of convenience or fairness.

The Court therefore **ORDERS** that Insurer Defendants' Motion to Transfer Venue is hereby **DENIED**.  (Doc. 79).

SO ORDERED this 16th day of November, 2006, at McAllen, Texas.

Randy Crane
United States District Judge